[No. 14435.   Department Two.   May 8, 1918.]

## S. W. CROOKS, *Appellant,* v. STEVENS COUNTY, *Respondent.*[1]

HIGHWAYS—INJURIES—CONTRIBUTORY NEGLIGENCE—APPARENT DANGERS—EVIDENCE—SUFFICIENCY.  Plaintiff, injured in the overturning of his load of hay, cannot recover from the county, where it appears that the accident happened through his manner of loading and driving, rather than to the fact that there was a dangerous grade and a rock in the road, and the hay and rack would not have slipped off if the wheels had been kept in the ordinary tracks, and the dangers were open and apparent.

Appeal from a judgment of the superior court for Stevens county, Ronald, J., entered June 30, 1917, in favor of the defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained through defects in a county road.   Affirmed.

*Roche & Onstine* and *R. A. Thayer,* for appellant.

*L. B. Donley* and *L. C. Jesseph,* for respondent.

MOUNT, J. — This action was brought to recover damages for personal injuries which the plaintiff received by the overturning of a load of hay upon which he was riding while driving over one of the public roads of Stevens county.   The case was tried to the court and a jury.   At the close of the plaintiff's case, the defendant moved the court for a directed verdict.   The trial court apparently had no doubt that he should grant this motion, but stated in substance that, in order to avoid another trial in case he was in error, he would hear all the evidence and submit the case to the jury and later enter such judgment as in his opinion was proper.   After the close of the defendant's evidence,

[1]Reported in 172 Pac. 1158.

the motion was renewed and denied. The case was submitted to a jury, and resulted in a verdict of $3,000 in favor of the plaintiff. Thereupon the trial court granted a judgment in favor of the defendant notwithstanding the verdict. The plaintiff has appealed from that judgment.

The facts are as follows: Prior to the 28th day of October, 1914, Stevens county had constructed a road from the town of Orient down a hill leading to a bridge across the Kettle river. This road was constructed upon a hillside. At the point where the appellant was injured, different witnesses placed the width of this road at from six feet, ten inches, to eight feet. At this point the road was blasted out of solid rock, so that there was an embankment about five feet high on the upper side, and the lower side was somewhat above the slope of the hill. At this point the road was somewhat rough because of the rocky condition. There was also a slight turn in the road at this point. It is contended by the appellant that a large rock sloped down from the embankment on the upper side of the road to or into the traveled way. There is some dispute upon this particular question. On the date named, the appellant went over this road for a load of hay. After going over the road, he loaded the loose hay upon his wagon and started back to his home. He was familiar with the road, having been over it a number of times. Being asked to describe the event, he testified as follows:

"Well, I started down this grade. When I came to the top of the grade I got out to see that everything was all right, the wagon was all right, the hay was seemingly in the proper position, the rack sat solid on the wagon. I got out to see to this before I started down this grade, to be sure that everything was all right. I examined to see that all these things were just so. I knew it was a dangerous road. I took particular pains to have the lines just so in my hands, and

the brake rope, so I started down. I held the lines in one hand and the brake rope in the other, possibly at times I held both together, but most all of the time I had one hand holding the lines and the other the brake rope. The team was a gentle team and everything was all right, there was no unusual thing happened that I know of . . .

"I came down to the place, right to the place where this accident happened. I knew that it was rough right at that point. I knew there were several rocks there but just exactly where this particular rock was I didn't know. I didn't know there was such a big rock as that one, but I knew there was rocks there because going up that road I could experience more or less of the roughness, so coming down I knew, that being so, that I would have to be very careful in going over that part of the road, the road being so narrow and all of those rocks there, so I drove the team very carefully and I came right down to this rock, I could feel several bumps there right around where this accident happened. I came down .a little further and I could feel more bumps, and as I came around this angle the front wheel I could feel took an unusual jar, and as I went over it I knew I had scraped across over one of those big rocks, so immediately as soon as I crossed over that—I was holding onto the lines, holding the team as best I could, as good as any teamster could do, when the horses, being pressed by the load, and maybe being a little nervous and when the hay bumped into them they give a quick step, and immediately after that the hind wheel, I could feel it take a great bump, which was right over that rock, and when it struck the rock the load of hay and the rack went right over and, of course, I went right over with it—the rack and the hay and I went over the embankment and I was thrown a little in front of the hay so that I escaped being buried . . ."

This is the explanation which the appellant himself gives of the accident and how it occurred. He was the only eyewitness to the accident. The wagon did not turn over. The hay and the rack upon the wagon fell

from the wagon. The wagon and the team remained upon the road. Other witnesses testified that, at this particular point, a ledge of rock sloped and extended from the bank down near the wheel tracks. There was a slight curve in the road at this point, and the appellant, while coming down the grade and attempting, no doubt, to hold the load in close to the bank at the upper side, turned his front wheel against this sloping ledge of rock. The rear wheel struck the rock where it was somewhere between twelve and fifteen inches high, and in that way the load and the appellant were thrown from the wagon.

It is argued by the appellant that the road was not a reasonably safe road by reason of this rock, and by reason of the fact that the road was on a grade, and by reason of the fact that the road was narrow. A number of cases are cited to the effect that it was error of the trial court to grant a judgment notwithstanding the verdict, because the court may not say that there was neither evidence nor reasonable inference from evidence to sustain the verdict. While it is true the evidence shows that the road was narrow and rocky at the point where this accident occurred, the evidence clearly shows that the road was reasonably safe for ordinary travel, and that, if the appellant had kept his wagon in the tracks where wagons were accustomed to go at that particular point, the accident would not have happened. The accident was caused solely by the appellant's veering from the beaten way to the side of the road and striking against the ledge of rock in the bank on the upper side. The hind wheel of the wagon struck this rock at a height of from twelve to fifteen inches, which was sufficient to, and no doubt did, cause the load of hay upon the wagon to be thrown from the road. The appellant was familiar with the character of the road, he knew that it was narrow, he knew that

it was rough at this particular place, and he knew that
it was on a hill.   Whatever dangers there were, were
open and apparent to him, and it was his duty, under
these circumstances, to follow the beaten track and not
to veer therefrom so as to run his wagon against the
embankment or a rock which was located therein.   It
is common knowledge that in a mountainous country
the roads are frequently graded out of hillsides through
rocky cuts and are narrow of necessity.   Counties are
not insurers of the safety of such roads for loads such
as the appellant was carrying.   As we said in *Culley
v. King County,* 101 Wash. 38, 171 Pac. 1034, in quot-
ing from *Leber v. King County,* 69 Wash. 134, 124 Pac.
397, 42 L. R. A. (N. S.) 267:

" 'We think it will require no argument to make
plain the fact that here there was no extraordinary con-
dition or unusual hazard of the road.   A similar con-
dition is to be found upon practically every mile of hill
road in the state.   The same hazard may be encoun-
tered a thousand times in every county of the state.
Roads must be built and traveled, and to hold that the
public cannot open their highways until they are pre-
pared to fence their roads with barriers strong enough
to hold a team and wagon when coming in violent con-
tact with them, the condition being the ordinary con-
dition of the country, would be to put a burden upon
the public that it could not bear.   It would prohibit the
building of new roads and tend to the financial ruin of
the counties undertaking to maintain the old ones.' "

It is plain from a reading of the whole evidence in
the case that the road at the point in question was
reasonably safe for ordinary travel, that the load of
loose hay piled high was not ordinary travel, and that,
if the appellant had kept his wagon in the tracks which
were worn upon the road at this particular point and
had not deviated so as to run his wagon against the
bank upon which the rock was located the accident

would not have happened. In short, while the appellant undertakes to testify that he was careful in every respect in examining his wagon and his load and in handling his team, it is plain that the cause of the accident was his own negligence in carrying the character of load he did and in veering from the road and striking the rock, causing the wagon to throw the load and injure him. We are satisfied that there was neither evidence nor inference which could properly be drawn from the evidence to sustain the verdict.

The judgment is therefore affirmed.

ELLIS, C. J., PARKER, CHADWICK, and HOLCOMB, JJ., concur.